**MARIA J. FONSECA    SBN 101682**
**LAW OFFICES OF MARIA J. FONSECA**
**702 MARSHALL STREET, SUITE 511**
**REDWOOD CITY, CALIFORNIA 94063**
**TELEPHONE: 650-367-7727**
**FACSMILE:    650-367-7729**

Attorney for:  Juan Carlos Barajas

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALLIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CRIMINAL NO. CR.08-0095 CRB |
| Plaintiff, | ) |
| v. | ) **DEFENDANT'S SENTENCING** |
| | ) **MEMORANDUM** |
| JUAN CARLOS BARAJAS-IBARRA, | ) |
| Defendant. | ) |

        Defendant JUAN CARLOS BARAJAS-IBARRA, hereby submits the following

sentencing memorandum to the Court for its consideration in sentencing him for Illegal Reentry

by an Alien After Deportation, in violation of 8 U.S.C. Section 1326.  Mr. Barajas-Ibarra was

offered a fast track plea agreement by the government, which would place him at a Level 17,

with a Category VI Criminal History, for a guideline range for imprisonment from 51 to 63

months.  The plea agreement called for imposition of the low end of the sentencing range.  A

Modified "Fast Track" Presentence Investigation Report was prepared for the Court's

consideration on May 16, 2008.

        Upon review of the plea agreement and the Modified Presentence Report, the Court

suggested that it might not be in the defendant's best interests for the Court to be restricted by

this plea agreement, at which point, it was mentioned that the defendant might want to consider pleading open.   At a subsequent hearing when the defendant stated he was ready to plead open, the Court inquired regarding the state prison sentence that defendant is serving and the Court's ability, if any, to run the federal sentence concurrent to any part of the state sentence.  The Court then directed probation to prepare a Sentencing Recommendation.  That recommendation was received by defense counsel via fax on September 5, 2008.   The Sentencing Recommendation recommends imposition of the mid-term sentence of 57 months minus 15 months that the defendant has already served in state prison custody for a 42 month sentence.

A quick reading of the Sentencing Recommendation reveals that the probation officer must have assumed that the Fast Track level 4 reduction was still in play because the total offense level is listed at 17.   If the defendant were to plead open without the fast track reduction, it could only be fairly assumed that he would qualify for a 2 point adjustment for early acceptance of responsibility pursuant to USSG Section 3E1.1(a) and a 1 point adjustment pursuant to USSG Section 3E1.1(b), which would place him at a total offense level 21.  If the defendant were still at a Category VI, his sentencing range would be 77 to 96 months.

This defense sentencing memorandum is submitted to address the question of concurrent sentencing and to suggest a sentence of 31 months which is sufficient, but not greater than necessary to achieve the sentencing goals of 18 U.S.C. 3553(a).

## MR. BARAJAS' PERSONAL BACKGROUND

Mr. Barajas was born in Mexico on November 30, 1974, but was raised in East Palo Alto, California.  He has four siblings; three live in Stockton, California, and the other lives in Newark.  His parents brought him here with his older brother when he was only two years old, so this is the only country he has ever known.  English is his first language, although he is bilingual/Spanish.  He graduated from Woodside High School, in Redwood City, California in 1994, and took some junior college classes at De Anza College in Cupertino, California.  Since he was brought to the United States as a toddler, since all his family members live here, and

since his wife and children are here, he was ill-equipped to survive in the country where he was born, and with which he had no real ties.

Mr. Barajas' father passed away from cancer a few months ago. His father and his mother both worked very hard to raise their family here and give them the advantages which they never had themselves. They were able to acquire several pieces of real estate investment property. Mr. Barajas' father and older brother became naturalized citizens, and his younger siblings were born here. His mother is still a legal permanent resident, as was Mr. Barajas until he lost his status because of his criminal conviction. On and off over the last ten years, Mr. Barajas worked for his father as a property manager. Mr. Ibarra realizes that because of his criminal behavior, he has lost the opportunity his parents gave him to be a legal resident of this country. He has become a man without a country.

Mr. Barajas married Jennifer Felder, the mother of his three young sons, last year while incarcerated in the San Mateo County Jail. They have been together since 1999. The ages of their sons are seven, six and four. Mrs. Barajas now lives in Lodi, California, with the three boys and her family. Her grandparents and Mr. Barajas' family have been very supportive in helping her and the children. They have also been supportive of Mr. Barajas. Mrs. Barajas' grandfather Martin F. Sullivan is Chairman and CEO of Sovereign General Insurance Services has offered opening a branch office in Ensenada, Baja California, so that upon Mr. Barajas' release from custody, he can work there and support his American born wife and children who plan to join him there. Because of his criminal behavior, Mr. Barajas realizes that he is subjecting his wife to having to leave this country if she chooses to live with him.

While incarcerated awaiting trial in San Mateo County, Mr. Barajas enrolled in a program called Choices.[1] He was in this program from March 2007 until his remand into the custody of the California Department of Corrections. Mr. Barajas credits the Choices program

---

[1] The Choices Program provides alcohol and drug counseling and educational services to inmates in the Maguire Correctional Facility. The Choices Program is a collaborative project supported by the San Mateo County Sheriff's Office and Health Services. It is open to all inmates who meet minimum requirements for classification and motivation. Program requirements include full participation in all program activities and the development of a recovery plan which includes functioning in the community after release. [Choices Program Literature]

with saving his life because it forced him to accept that his drug addiction over the last ten years had caused a downward spiral of dysfunctional behavior that almost destroyed him and hurt the people that he loved.   Through Choices, he acknowledged what a "lowlife/parasite" he had become and how the drugs had taken over his life.  He learned a new set of values, starting with honesty, responsibility, accountability, and a sense of community.  He has tried to carry on with these values while doing his prison sentence.

At the time of sentencing, the Court will be provided with letters from Mr. Barajas' wife, his wife's grandfather, and Mr. Barajas' sister.  These letters speak to a perceptible change in Mr. Barajas' life and outlook and show that he has the unconditional love and support of his family. The most important thing these letters attest to is that while Mr. Barajas has engaged in criminal behavior, he is not a sociopath or a psychopath.  Mr. Barajas' case merits a resolution which not only holds him accountable, but gives him a chance for the redemption he is seeking.

### SUMMARY OF MR. BARAJAS' CRIMINAL HISTORY

On January 27, 1997, Mr. Barajas entered a plea of *nolo contendere* to a violation of Penal Code Section 460(a) [Count 2- residential burglary] and to a second count of violation of Penal Code Section 487(a) [Amended Count 3-grand theft of a person] in San Mateo County Superior Court Case No. SC 039675.   On April 18, 1997, Mr. Barajas was sentenced to serve two years in California State Department of Corrections.   One of the charges involved a dispute over personal property with the victim's nephew.

After Mr. Barajas completed his state prison term, he was released on parole.        In 1998, Mr. Barajas suffered one misdemeanor conviction for a violation of Penal Code Section 243(b) – misdemeanor battery on a police officer – in San Mateo County Superior Court, Case No. SM295688(a).  His parole was violated and he was returned to custody of the California Department of Corrections for a four month term.  Upon his release from state custody in March 1999, he was picked up by Immigration and deported.

///

Def.'s Sentencing Memo; Case No. CR 08-0095 CRB

In 2000, he was convicted of another misdemeanor in violation of Penal Code Section 148(a) – resisting arrest in Alameda County.   In November 2003, Mr. Barajas was arrested for a parole violation, and returned to State Prison for four months.  Upon his release on May 3, 2004, he was deported .  On June 19, 2005, Mr. Barajas was discharged from parole.   In February 2006, he was arrested for a misdemeanor for giving false information to a police officer [Penal Code Section 148.9]

Mr. Barajas' first burglary charge was over ten years ago.  It was a case of very stupid judgment involving 'self-help.'.  Since then, although he has not led a blameless life, his three misdemeanor convictions have not been serious.   Mr. Barajas' three misdemeanor convictions could arguably by attributable to his desire to stay under the radar and avoid contact with law enforcement because he lost his immigration status.   His conviction last year involved the theft of a storage locker in an open carport, which one Judge called a "technical" residential burglary. His case was resolved by court trial so he could preserve the issue on appeal of whether an open-air carport constitutes a "dwelling house".  He was sentenced in November 2007, to serve four years in State Prison as a second strike case.   He is scheduled to be released on this case in December 2009.

Mr. Barajas' criminal history had been driven by a serious drug addiction, which is not offered as an excuse, but as an explanation.  He believes that the life skills he learned in the Choices program have given him the tools necessary to fight this addiction successfully, and will continue seeking help when needed.


## CIRCUMSTANCES JUSTIFYING A DOWNWARD DEPARTURE

"Cultural assimilation" is a permissible ground for a downward departure under the Sentencing Guidelines in sentencing a defendant for illegally reentering the United States after deportation for a felony conviction.  *U.S. v. Lipman*, 133 F.3d.726 (9th Cir. 1998)   As stated in *Lipman*, cultural assimilation is a fact specific ground for departure that may speak to an individual defendant's offense, his conduct, and his character.  The Court found that cultural

assimilation is relevant to sentencing under U.S.S.G Section 2L1.2 if a district court finds that a defendant's unusual cultural ties to the United States – rather than ordinary economic incentives – provide the motivation for the defendant's illegal reentry or continued presence in the United States.  The Court further stated that cultural assimilation may also be relevant to the character of the defendant sentenced under U.S.S.G Sec. 2L1.2 insofar as his culpability might be lessened if his motives were familial or cultural rather than economic.   As shown herein, the considerations outlined by the 9th Circuit in *Lipman* apply to Mr. Barajas in the case at bar, and we ask the Court to take these factors into consideration for a downward departure of at least 4 levels.

A District Court may depart downward in sentencing a defendant who has pled guilty to illegally reentering the United States following a felony conviction and deportation where the defendant's aggravated felony is less serious than most felonies contemplated by the Sentencing Commission in creating the 16 point enhancement.  *U.S. v. Ortega-Mendoza* , 981 F.Supp. 694 (D.D.C.1997) Sentencing Guideline Sec. 4A1.3 provides that a downward departure may be warranted when the defendant's criminal history significantly over-represents the seriousness of his criminal history or the likelihood that he will commit further crimes, and constitutes the kind of unusual mitigating circumstance of a kind not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a downward departure.   In the case at bar, Mr. Ibarra's triggering offense is ten years old.  We would ask that the Court not impose the three of the thirteen criminal history points.  This can be achieved  by not counting the three misdemeanors, or by not imposing the two points because the defendant was technically on state parole when he illegally returned to the United States and the one point because he committed the instant offense within two years after his release from imprisonment in Case No. SC 039675.  Mr. Ibarra was released from custody after a parole violation in 2004, and since this case may be deemed to have occurred when he was 'found' in January 2008, more than two years had passed in any event.   With 10 to 12 criminal history points,  Mr. Ibarra would be at a Category V instead of a Category VI.

At an Offense Level 17 with a Category V history, the sentencing guideline range would be 46 to 57.  We would ask that the court impose the lower end of the range, and then as the probation officer suggested in her sentencing recommendation, reduce the sentence by the 15 months Mr. Ibarra has already spent in State Custody.  This would put Mr. Ibarra at 31 months.

### DEFENDANT'S SENTENCE SHOULD BE SUFFICIENT
### BUT NOT GREATER THAN NECESSARY
### TO ACHIEVE THE GOALS OF SECTION 3553(A)

The Court must not only consider the guideline range, but must also consider the other directives set forth in 18 U.S.C. section 3553(a).  See *United States v. Booker*, 543 U.S. 220 (2005).  " The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of section 3553(a).  *United States v. Carty*, 520 F. 3d.984 ( 9th Circuit 2008). (internal quotations omitted)).  Those goals include the need:

- To reflect the seriousness of the offense, to promote respect for the law, and to Provide just punishment for the offense;

- To afford adequate deterrence to criminal conduct;

- To protect the public from further crimes of the defendant; and

- To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. Sec. 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors, including:

- The nature and circumstances of the offense, Section 3553(a)(1)

- The history and characteristics of the defendant, Section 3443(a)(1);

- The kinds of sentences available, Section 3553(a)(3);

- The sentencing guideline range, Section 3553(a)(4);

- The pertinent Sentencing Commission policy statements, Section 3553(a)(5);

- The need to avoid unwarranted sentencing disparities, Section 3553(a)(6);
- The need to provide restitution to any victims of the offense, Section 3553(a)(7).

In the case at bar, a sentence of thirty-one months accomplishes the goals of section 3553(a).   Mr. Ibarra respectfully requests that this Court impose such a sentence for the reasons stated herein for considering a downward departure.

## CONCLUSION

Giving full consideration to Mr. Ibarra's history and characteristics, his motives for returning to the United States after losing his legal residency, together with the goals of sentencing, Mr. Ibarra respectfully requests that this Court impose a sentence no greater than thirty-one months – a sentence which is sufficient, but not greater than necessary to meet the Court's sentencing objectives.

Dated:  September 8, 2008                    Respectfully submitted,


_____
MARIA J. FONSECA
Attorney for Juan Carlos Ibarra